**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 11-275-JBC**

**WESTFIELD INSURANCE COMPANY,**                                                            **PLAINTIFF,**

**V.**                                          <u>**MEMORANDUM OPINION & ORDER**</u>

**TAHANA YOUNG, ET AL.,**                                                                  **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

Pending before the court are cross-motions for declaratory judgment.  For the following reasons, the court will grant Westfield Insurance Company's motion, R.26, and deny Tahana Young's motion, R.28.

Westfield Insurance Company initiated this action against Tahana Young and Devin Calhoun in response to an underlying dispute between the defendants involving a fatal motor vehicle accident that allegedly implicates an insurance policy covered by Westfield.  Young, on behalf of the Estate of Sabino Camacho Flores and Flores's two children, brought a suit in state court against Calhoun after Flores was killed in a November 23, 2009, automobile accident involving Calhoun.  At the time of the accident, Calhoun was driving a vehicle owned by Ryan Nelson that had been repaired by the Maysville Community Technical College ("MCTC") diesel technology program in Morehead, Kentucky.  A dispute has arisen over whether an insurance policy issued by Westfield to Kentucky Community and Technical College System ("KCTCS"), which maintains a number of community colleges including the Morehead branch of MCTC, covers damages related to the underlying dispute.

1

Westfield moves the court to enter a judgment declaring that Westfield has no duty to pay or extend coverage to the defendants for damages sought in any lawsuit arising out of the motor vehicle accident in dispute.  In response, Young moves for the opposite – a judgment declaring that coverage for the damages sought in the underlying action exists under Westfield's business auto and umbrella policies.  Because no coverage exists under the Westfield policy for damages related to the use of the Nelson vehicle in the accident at issue, a declaratory judgment will be entered in favor of Westfield and not Young.

The facts are undisputed.  Calhoun, a student of the MCTC diesel technology program, brought Nelson's vehicle to Morehead's campus for repair work in 2009.  Nelson, the owner, as well as Dennis Swartz, the faculty instructor of the diesel technology program, permitted and approved use of the vehicle as a live classroom project.  On November 23, 2009, Calhoun completed the repairs on the vehicle and, after a final inspection by Swartz, drove the vehicle off the campus to be returned to Nelson.  Calhoun's plan was to drive from Morehead to his girlfriend's house in Ewing, Kentucky, for the night, and then to complete his trip to Versailles, Kentucky, the next morning, where he would meet Nelson to transfer the vehicle.  While Calhoun was en route to his girlfriend's house, the truck he was driving collided with Flores's vehicle, ultimately leading to Flores's death.

On the date of the accident, Westfield insured MCTC under a policy that provided several types of coverage, including commercial general liability, business

2

auto, and umbrella liability coverage.    Young concedes that no coverage exists under the commercial general liability policy; however, she argues that the business auto and umbrella liability policies cover the damages in dispute because Calhoun was driving a vehicle "borrowed" by MCTC at the time of the accident.  Even though students and instructors had repaired the Nelson vehicle as part of the MCTC diesel technology program prior to the accident, no coverage applies here because MCTC had not "borrowed" the vehicle at the time of the accident.

An insured under the business auto liability policy is the policy holder, which in this case is MCTC, and "[a]nyone else while using with [the policy holder's] permission a covered 'auto' [it] own[s], hire[s] or borrow[s]." R.27-5, p.5.  A covered "auto" is any auto listed in the policy declarations, which includes "'autos' [the insured] lease[s], hire[s], rent[s], or borrow[s]." R.27-5, p.4.  Young contends that MCTC borrowed the vehicle because the use of Nelson's truck conferred a benefit to MCTC, *see Travelers Indemnity Co. v. Swearinger*, 169 Cal. App. 3d 779, 785-88 (3 Dist. 1985), and MCTC had substantial possession, dominion, and control of Nelson's truck. *See Schroeder v. Bd. of Supervisors of Louisiana State Univ.*, 591 So. 2d 342, 346-37 (La. 1991).   MCTC was not a "borrower" at the time of the accident under either interpretation.

First, the case law cited does not support Young's theory that MCTC received a benefit from the use of Nelson's vehicle *at the time of the accident*.  In *Swearinger*, a school sought parent volunteers to host visiting participants in a basketball tournament.  "The host families would provide meals, sleeping quarters,

3

bathing facilities and transportation to and from the school." *Swearinger*, 169 Cal. App. 3d at 782 (Cal. Crt. App., 1985). Families without cars would not host. *Id.* An accident occurred when the daughter of a host family, a student, was transporting herself and another visiting student to a basketball game. The court held that the student driver could have been considered an insured under the school's policy because "[the school] can borrow a vehicle whenever it properly gains the use of a third party's vehicle for its purposes," with no consideration of the school's dominion over or possession of the vehicle. *Id.* at 785.

*Swearinger* is distinct from the present case because there the vehicle was being used for its purpose requested by the school – transporting guest students. *Id.* Here, at the time of the accident, the Nelson vehicle was not being "used for purposes consonant with the underlying need for borrowing the vehicle." *Caston et al. v. Buckeye Union Ins. Co.*, 456 N.E.2d 1270, 1273 (Ohio App. Lake County 1982). Even if a benefit were conferred on MCTC in the use of Nelson's vehicle as a live classroom project, the purpose of the vehicle was for repair and teaching, not driving. Thus, the cases cited do not support coverage under the Westfield policy for Nelson's vehicle at the time of the accident.

Second, the case law cited does not support Young's theory that MCTC had control or dominion over Nelson's vehicle at the time of the accident. In *Schroeder*, the court found that a school was not the borrower of a vehicle driven by a student who was involved in an accident on the way to procure ice for a school dance. *Schroeder et al. v. Brd. of Supervisors of Louisiana State University,*

4

*et al.*, 591 So. 2d 342, 344 (La. 1991).  A faculty sponsor had asked a student to pick up ice, not knowing that this particular student did not have a vehicle, and then the student asked another student to drive him to get the ice.  *Id.*  The students were involved in an accident on their way back to school.  *Id.*  The *Schroeder* court required an element of "substantial control" before labeling a person or entity a "borrower" of a third party vehicle and found that "a reasonable person . . . would not say that [this school] had 'borrowed' the [] vehicle." *Id.* at 346.

Calhoun was not an employee of MCTC.  There was no official school policy regarding the return of vehicles used as live classroom projects, only an assumption that if a student, rather than an owner, brought in a vehicle, the student would return the vehicle to the owner.  R.27-3, p.22-28.  Swartz, the faculty instructor, did not request that Calhoun take the vehicle back to Nelson.  R.27-3, p.28.  Swartz did not know that Calhoun was driving to his girlfriend's house on the date of the accident. R.28-1, p.28.  And, Calhoun did not take the most direct route from campus to Versailles, Kentucky, where he planned to return the vehicle to Nelson. R.28-1, p.22-23.  According to Calhoun, "[Calhoun] just told [Swartz] that [he] had to have the truck back to [Nelson]" by the morning of November 24, 2009, and that was "pretty much the whole conversation" about the exchange. R.28-1, p.32.  Even though Swartz was aware that Calhoun would likely drive the vehicle back to Nelson, he had no control over how or where Calhoun would return the vehicle, and he was privy to no information about the exchange.  Thus, MCTC

5

had no substantial control over the vehicle once it left campus; "a reasonable person . . . would not say that [MCTC] had 'borrowed' the [Nelson] vehicle" at the time of the accident. *Schroeder*, 591 So. 2d at 346 (La. 1991).

Because MCTC did not own, hire, or borrow the Nelson vehicle at the time of the accident, the vehicle is not a covered auto under the business auto liability policy. Also, no umbrella coverage exists for the damages in dispute; a covered auto under the umbrella policy is one to which "underlying insurance applies," and no underlying insurance, business auto liability or commercial general liability, applies to the Nelson vehicle. R.27-5, p.11. Accordingly,

**IT IS ORDERED** that Westfield Insurance Company's motion for declaratory judgment, R.26, is **GRANTED**.

**IT IS FURTHER ORDERED** that Tahana Young's motion for declaratory judgment, R.28, is **DENIED**.

A separate judgment will be entered.

Signed on November 6, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY